QUIROGA LAW OFFICE, PLLC
505 N. Argonne Rd., Suite B-109
Spokane Valley, WA  99212
Telephone (509) 927-3840

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| CHRISTIAN GARCIA HERRERA,<br><br>Plaintiff,<br><br>vs.<br><br><br>KIRSTJEN M. NIELSEN, Secretary, Department of Homeland Security; LOREN MILLER, Director, Nebraska Service Center, U.S Citizenship and Immigration Services; L. FRANCIS CISSNA, Director, U.S. Citizenship and Immigration Services; THOMAS D. HOMAN, Acting Director, U.S Immigration and Customs Enforcement; CHRYSTA STOCK, Spokane Field Office Director, U.S Citizenship and Immigration Services.<br><br>Defendants. | Case No. 19-cv-00094<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Complaint for Declaratory and
Injunctive Relief - 1

## INTRODUCTION

1. Plaintiff Mr. Garcia Herrera ("Plaintiff" or "Mr. Garcia Herrera") is a young man who was first brought to this country as a minor nearly twenty years ago. Mr. Garcia Herrera is hard-working young man, though originally from Mexico, has lived in the United States since about a year old.

2. Federal immigration authorizes have repeatedly granted his permission to live and work in this country, pursuant to the Deferred Action for Childhood Arrivals ("DACA") program.

3. Mr. Garcia Herrera has utilized the grants of deferred action to build a life in the United States, excelling in school and graduating in 2016. Since graduating he was worked for Washington's Department of Natural Resources ("DNR") as a firefighter, undergoing substantial training for his position.  He hopes one day to work in law enforcement.

4. However, Defendants have denied Mr. Garcia Herrera's application to renew his deferred action status without notice, without due process, and without a reasoned explanation for their actions, contrary to their own rules of adjudication.

5. On October 29, 2018 he filed with USCIS for a fourth DACA renewal.

6. On November 30, 2018, USCIS issued a denial notice to Mr. Garcia Herrera. USCIS stated that Mr. Garcia Herrera had not warranted a favorable exercise of prosecutorial discretion and provided no reason for this determination.

7. Mr. Garcia Herrera has no criminal record and meets all elements for DACA approval.

8. Furthermore, there is no cause for him to be denied under the reasons provided by USCIS as a cause for denial.

9. Mr. Garcia Herrera, through the Quiroga Law Office, PLLC, resubmitted the application for DACA renewal on January 10, 2019.

10. He had a fingerprint appointment set with USCIS for February 8, 2019. However, on February 5, 2019, USCIS issued an identical denial letter to the one that was issued on November 30, 2018. Again, USCIS provided no reason for the denial of DACA.

11. Created in June 2012, the DACA program was designed to provide a lifeline to young undocumented immigrants, like Mr. Garcia Herrera, who came to the United States as children.

12. As former President of the United States Barack Obama explained when the DACA program was first announced, these young immigrants "are Americans in their heart, in their minds, in every single way but one: on paper."[1] He recognized that "it makes no sense" to deport "[t]hese recognized that "it makes no sense" to deport "[t]hese [] young people who study in our schools , . . . play in our neighborhoods, [are] friends with our kids, [and] pledge allegiance to our flag."[2]

13. Recognizing that the government must prioritize its limited law enforcement resources, the Department of Homeland Security ("DHS") created the DACA program to allow young undocumented immigrants who satisfy certain age, educational, and other requirements to remain in the United States without fear of deportation for a specified, renewable two-year period, and thus continue to contribute to their communities.

---

[1] President Barack Obama, Remarks on Immigration Reform, 2012 DAILY COMP. PRES. DOC. 1 (June 15, 2012), available at http://www.gpo.gov/fdsys/pkg/DCPD-201200483/pdf/DCPD-201200483.pdf.

[2] *Id.*

Complaint for Declaratory and
Injunctive Relief - 3

14. Like all DACA recipients, Mr. Garcia Herrera has passed a criminal background check and has been found three times to have satisfied each of the applicable eligibility criteria for DACA.

15. The current administration has continued the DACA program. Recently both President Donald Trump and DHS Secretary John Kelly have reaffirmed DHS' policy not to prioritize young immigrants granted DACA for immigration enforcement. President Trump has described DACA recipients as "absolutely incredible kids," explaining that it would be "very, very rough" to deport them, since they were brought to the United States as children.[3]

16. Subsequently, on September 5, 2017, Attorney General Jeff Sessions announced that DACA was being rescinded. However, legal challenges resulted in preliminary injunctions requiring the government to continue to review DACA renewal applications.

17. Because of the DACA program, Mr. Garcia Herrera and hundreds of thousands of young immigrants like him have been able to complete their educations, begin careers, and live meaningful and productive lives in the United States.

18. Yet notwithstanding the President's and DHS Secretary's assurances— and despite the fact that Mr. Garcia Herrera circumstances have not changed during the six years he has been a DACA recipient—USCIS recently denied Mr. Garcia Herrera's application for DACA renewal on the grounds that he does not qualify.

19. Contrary to USCIS's new position, Mr. Garcia Herrera remains eligible for DACA, as he continues to satisfy the program's education and residency requirements and he has no criminal history whatsoever.

---

[3] Nolan D. McCaskill, Trump says he will treat Dreamers 'with heart', Politico, Feb. 16, 2017, http://www.politico.com/story/2017/02/trump-pressconference-dreamers-heart-235103.

Complaint for Declaratory and
Injunctive Relief - 4

20. Mr. Garcia Herrera has received no meaningful explanation from USCIS as to why he is suddenly disqualified when his circumstances have not changed. Nor has USCIS provided Mr. Garcia Herrera with any opportunity to contest the government's actions, in violation of its own procedures.

21. The revocation and nonrenewal of Mr. Garcia Herrera's DACA have deprived him of his ability to work and the assurance that he will be permitted to remain in the country he knows as his home.

22. The government's decisions to deny the renewal of Mr. Garcia Herrera's DACA status, without meaningful explanation or process, and in violation of the program's enumerated eligibility criteria, violate the Administration Procedure Act, 5 U.S.C. §§ 553, 706, et al., as well as the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

23. Mr. Garcia Herrera therefore asks that the Court: declare the government's actions unlawful; order that the government re-adjudicate his application for DACA under the program's existing eligibility criteria using a fair procedure; and, comply with its own rules and restore his DACA, pending the outcome of the government's decision.

**JURISDICTION AND VENUE**

24. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims under the U.S. Constitution and the Administrative Procedure Act, 5 U.S.C. § 701 et seq. The Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

25.  Venue is proper in this Court under 28 U.S.C. § 1391(e) because Defendants Kirsten M. Nielsen, Loren Miller, L. Francis Cissna, Thomas D. Homan, and Chrysta Stock, are Officers of the United States acting in their official capacities, and DHS, U.S. Immigration and Customs Enforcement ("ICE"), and the United States Citizenship and Immigration Services ("USCIS"), are agencies of the United States. Additionally, Plaintiff resides in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

26. There are no additional administrative remedies available for Plaintiff to exhaust. There is no administrative appeal of USCIS' decision that Plaintiff is no longer eligible for DACA.

## PARTIES

27. Mr. Garcia Herrera, a resident of Tonasket, Washington, is a 21-year-old native and citizen of Mexico who has lived in the United States since he was first brought here in 1998 when he was one year old. For the past six years, federal immigration authorities have granted him permission to live and work in the United States in the form of deferred action.

28. Defendant Kirstjen Nielsen, is sued in her official capacity of Secretary of DHS. As DHS Secretary, Ms. Nielsen is responsible for the administration and enforcement of the immigration laws of the United States.

29. Defendant Loren Miller is sued is his official capacity as Director of USCIS Nebraska Service Center. As Director of the Nebraska Service Center, Mr. Miller is responsible for the overall administration of the USCIS Nebraska Service Center and the decisions that it issues.

30. Defendant L. Francis Cissna is being sued in his official capacity as the Director of the U.S Citizenship and Immigration Services. As Director, Mr. Cissna is responsible for the administration and enforcement of the immigration laws of the United States.

31. Defendant Thomas D. Homan is sued in his official capacity as Acting Director of ICE. In his position, Mr. Homan is responsible for the overall administration of ICE and operation of ICE's immigration enforcement and detention activities.

32. Defendant Chrysta Stock is sued in her official capacity as Director of the Field Office in Spokane, Washington. As Field Office Director, Ms. Stock is responsible for the administration of the Spokane Field Office and decisions that it issues.

## BACKGROUND

**Deferred Action and the DACA Program**

33. Deferred action is a longstanding form of administrative action by which the federal Executive Branch decides, for humanitarian or other reasons, to refrain from seeking a noncitizen's removal and to authorize his continued presence in the United States. A grant of deferred action indicates that the noncitizen's presence in the United States is known to the federal government, and the federal government has made a determination, based on a review of the individual's case, to allow her to remain in the United States for a specific period. Receipts of deferred action are also eligible to receive employment authorization under federal law upon a showing of economic necessity. See 8 C.F.R. § 274a.12(c)(14). For decades, the federal government has used deferred action to authorize numerous groups of immigrants to live and work in the United States for a temporary period.

34. On June 15, 2012, the former DHS Secretary announced a new deferred action program—the DACA program—for young immigrants who came to the United States as children and are present in the country without a formal immigration status. The DACA program was established to allow these young immigrants to remain in the United States without fear of deportation for a specified, renewable period.

35. In announcing the DACA program, the DHS Secretary explained that "[o]ur Nation's immigration laws . . . are not designed to be blindly enforced without consideration given to the individual circumstances of each case. Nor are they designed to remove productive young people to countries where they may not have lived or even speak the language. Indeed, many of these young people have already contributed to our country in significant ways."[4]

---

[4] Memorandum from Janet Napolitano, Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children ("Napolitano Memo") 2 (June 15, 2012), *available at*

Complaint for Declaratory and
Injunctive Relief - 7

36. President Obama elaborated that the federal government decided to make deferred action available to young immigrants because "it makes no sense . . . to expel these young people who want to staff our labs or start new businesses or defend our country."[5] These individuals are "talented young people, who, for all intents and purposes, are Americans—they've been raised as Americans, understand themselves to be part of this country." The DACA program is intended "to lift the shadow of deportation from these young people" and "to mend our Nation's immigration policy to make it more fair, more efficient, and more just."[6]

37. Under DACA, young immigrants who entered the United States as children and who meet educational and residency requirements may apply for deferred action. The DHS Secretary's guidance provides that noncitizens are eligible for DACA if they:

- were under the age of 31 as of June 15, 2012;

- came to the United States before reaching their 16th birthday;
- have continuously resided in the United States since June 15, 2007, up to the present time;

- were physically present in the United States on June 15, 2012, and at the time of making the request for consideration of deferred action with USCIS;

- entered without inspection before June 15, 2012, or had an expired lawful immigration status as of June 15, 2012;

- are currently in school, have graduated or obtained a certificate of completion from high school, have obtained a GED certificate, or are

---

http://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretionindividuals-who-came-to-us-as-children.pdf.

[5] President Barack Obama, Remarks on Immigration Reform, 2012 DAILY COMP. PRES. DOC. 1 (June 15, 2012), *available at* http://www.gpo.gov/fdsys/pkg/DCPD-201200483/pdf/DCPD-201200483.pdf.

[6] *Id.*

Complaint for Declaratory and
Injunctive Relief - 8

an honorably discharged veteran of the Coast Guard or Armed Forces
of the United States;

- have not been convicted of a felony, significant misdemeanor,[7] or three or more other misdemeanors; and,

- do not otherwise pose a threat to national security or public safety.[8]

38. If a DACA applicant satisfies these eligibility criteria, the agency may grant him or her deferred action on a case-by-case basis. The eligibility criteria themselves are not discretionary.

39. The DACA application process includes extensive criminal background checks.

40. Under the DACA program, deferred action is available for a period of two years, subject to renewal, and applicants who are approved may obtain work authorization, and if such authorization is granted, a Social Security Number.[9]

41. Noncitizens granted work authorization are issued federal employment authorization documents or EADs. A decision to grant or deny a deferred action application or renewal is separate and independent from any removal proceedings in immigration court to determine whether a noncitizen should be deported from the United States. Although noncitizens with DACA or other types of deferred action generally will not be placed in removal proceedings so

---

[7] A significant misdemeanor is a conviction that meets the following criteria: an offense of "domestic violence; sexual abuse or exploitation; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or, driving under the influence; or . . . [a conviction] for which the individual was sentenced to time in custody of more than 90 days." See USCIS, Consideration of Deferred Action for Childhood Arrivals Process, Frequently Asked Questions (May 14, 2017), available at https://www.uscis.gov/humanitarian/consideration-deferred-actionchildhood- arrivals-process/frequently-asked-questions.

8 Napolitano Memo at 2; USCIS, Consideration of Deferred Action for Childhood Arrivals Process, supra note 6.

9 Id.

Complaint for Declaratory and
Injunctive Relief - 9

long as the deferred action grant has not been terminated or revoked, the granting of deferred action has no formal impact on removal proceedings. A noncitizen who is in removal proceedings can apply for DACA separately and simultaneously.[10] If that application is granted, the removal proceedings nevertheless continue unless the immigration judge takes action to administratively close or terminate the proceeding. Further, an immigration judge has no power to grant or deny deferred action, or to review or reverse USCIS' decision to deny deferred action.

**Mr. Garcia Herrera's Life in the United States**

42. Plaintiff Christian Garcia Herrera, a resident of Washington, is a 21-year-old citizen of Mexico who has lived in the United States since he was first brought here in 1998, when he was barely a year old.

43. In Junior High School he received commendation for his schoolwork and effort. He played high school football until he graduated in June 2016.

44. After high school Mr. Garcia Herrera began working as a firefighter for the Washington DNR. His DACA status, initially obtained in 2013, allowed him to work in this demanding position. Mr. Garcia Herrera has obtained substantial training related to his DNR employment, but without current authorization to work he risks missing upcoming training ahead of the 2019 fire season, as DNR is not able to employ him.

45. While this obviously creates a significant hardship for Mr. Garcia Herrera, DNR is also impacted. In March 2018, Mr. Garcia Herrera and his longtime friend and coworker Noe Vasquez (another DACA recipient) spoke at a press conference alongside Washington Lands Commissioner Hilary Franz to discuss DACA.

---

[10] Napolitano Memo at 2.

Complaint for Declaratory and
Injunctive Relief - 10

46. Commissioner Franz spoke in support of Mr. Garcia Herrera and Mr. Vasquez and noted the value to DNR of these trained firefighters. Mr. Garcia Herrera discussed how his life was improved by his DACA status and lamented the instability he faced given the uncertain fate of the DACA program.

47. Mr. Garcia Herrera and Mr. Vazquez were also featured in a May 20, 2018 article that discussed their DACA status while highlighting their work with DNR. At that time, their hometown of Tonasket was experiencing severe flooding, and both men were among nearly 200 DNR firefighters performing flood relief.

48. Mr. Garcia Herrera again noted that DACA has allowed him to remain in the only country he has ever known, and that he is proud to be able to serve as a firefighter protecting his home. While Mr. Garcia Herrera has spoken publicly about the DACA program and his own uncertain future without DACA, he has not been on the wrong side of the law. He has never been arrested and has no criminal history. Similarly, he has never been in removal proceedings in immigration court.

49. Mr. Garcia Herrera hopes to join Mr. Vasquez and his DNR peers for training ahead of the 2019 fire season. Without a prompt extension of his authorization to work, not only will he be unable to work for DNR this summer, he will fall behind his peers in training and experience, putting him behind and potentially impacting his long-term career.

**Mr. Garcia Herrera's Grants of Deferred Action from 2012 to 2019.**

50. Shortly after DACA was enacted in June 2012, Mr. Garcia Herrera submitted an application. On January 20, 2013 his application was approved, as were his renewal applications in 2015 and 2017. His last renewal extended the DACA protection and work authorization until February 13, 2019.

51. Mr. Garcia Herrera applied to renew his status on October 29, 2018, well ahead of the expiration of his deferred status. Although his circumstances remained unchanged with respect to his eligibility for DACA, his renewal application was denied on November 30, 2018. The only explanation provided was that he did not establish that he warranted a favorable exercise of prosecutorial discretion. No positive or negative factors were noted, and the denial indicated that this decision was unreviewable and could not be appealed.

52. Mr. Garcia Herrera then submitted another renewal application, incurring another $495 filing fee, on January 14, 2019. This application included additional evidence regarding his success in school and his work as a firefighter. This application was denied on February 5, 2019, in a letter essentially identical to the first denial letter. Despite the submission of additional positive evidence supporting Mr. Garcia Herrera's application, no positive or negative factors were discussed, and prosecutorial discretion was denied. The denial letters differ only in the date and in the application reference number and are otherwise identical.

53. The denial letters failed to provide any explanation for the change in the government's longstanding position that Mr. Garcia Herrera was deserving of favorable discretion.

54. The denials were silent as to why he no longer met the DACA eligibility requirements, and explicitly stated he could not provide additional evidence, appeal, or seek reconsideration of the decision.

55. Mr. Garcia Herrera has suffered and will continue to suffer significant and irreparable harm because of Defendants' decisions, acts, and failures to act as described herein.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Administrative Procedure Act)

56. The foregoing allegations are repeated and incorporated as though fully set forth herein.

57. Mr. Garcia Herrera satisfies the DACA program's eligibility criteria, as evidenced by his prior grant of DACA status and renewal of that status.

58. The government's decisions to deny Mr. Garcia Herrera's DACA renewal application on the grounds that he does not deserve favorable discretion are arbitrary and capricious and contrary to law. 5 U.S.C. § 706(2)(A).

59. The government's decisions are arbitrary and capricious and contrary to law because they misapply the mandatory DACA eligibility criteria and violate DHS' own procedure for adjudicating DACA. Further, the government has failed to provide a reasoned explanation for its change in position.

## SECOND CLAIM FOR RELIEF
(Administrative Procedure Act)

60. The foregoing allegations are repeated and incorporated as though fully set forth herein.

61. The Administrative Procedure Act ("APA"), 5 U.S.C. § 553, requires that before a federal agency promulgates a new rule, the agency must publish in the Federal Register a general notice of proposed rulemaking and provide an opportunity for comment by interested parties. See 5 U.S.C. § 553 (b), (c). A substantive rule must be published at least 30 days prior to its effective date. See 5 U.S.C. § 553(d).

62. Mr. Garcia Herrera satisfies the eligibility criteria for the DACA program, as demonstrated by his prior grant of DACA status and the renewal of that status.

63. To the extent the government's adverse decisions in Mr. Garcia Herrera's case reflects a change in the DACA eligibility criteria, such a change failed to satisfy the notice and comment

requirements of the APA. 5 U.S.C. §§ 553(b), (c). Any such change also failed to provide the 30-day notice period required by 5 U.S.C. § 553(d).

## THIRD CLAIM FOR RELIEF
(Due Process Clause of the Fifth Amendment to the U.S Constitution)

64. The foregoing allegations are repeated and incorporated as though fully set forth herein.

65. The Due Process Clause of the Fifth Amendment to the United States Constitution prevents the government from depriving individuals of a liberty or property interest without due process of law.

66. Defendants revoked Mr. Garcia Herrera's DACA and, consequently, his work authorization, and denied his renewal request without providing his with a constitutionally adequate process.

67. Defendants have violated Mr. Garcia Herrera's due process rights by denying his DACA renewal application without providing his with adequate notice of intent to terminate, a reasoned explanation for their decision, and an opportunity to respond, and to present arguments and evidence to demonstrate that he continues to meet DACA's eligibility requirements.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays this Court to:

a. Declare Defendant's decision terminating Mr. Garcia Herrera's DACA and denying his application for renewal of DACA to be unconstitutional and contrary to law;

b. Enter and order restoring Mr. Garcia Herrera's DACA pending Defendants' re-adjudication for his application under DACA's existing eligibility requirements;

c. Enter an order requiring Defendants to comply with its own procedures and provide Mr. Garcia Herrera adequate notice, a reasoned basis for its decision, and an opportunity for

    him to respond, and to present arguments and evidence demonstrating his eligibility for DACA;

d. Enter an order enjoining Defendants from arresting or detaining Mr. Garcia Herrera during the pendency of this action and until Mr. Garcia Herrera's DACA eligibility can be re-adjudicated;

e. Award Plaintiff's counsel reasonable attorneys' fees under the Equal Access to Justice Act, and any other applicable statute or regulation; and

f. Grant such further relief as the Court deems just, equitable, and appropriate.

Dated: March 25, 2019                                                                 Respectfully submitted,

                                                                /s/ Hector E. Quiroga, Sr

                                                                                           Hector E. Quiroga
                                                                     Washington State Bar No.
                                                                  QUIROGA LAW OFFICE, PLLC
                                                          505 N. Argonne Rd., Suite B-109
                                                                 Spokane Valley, WA  99212
                                                                  Telephone (509) 927-3840
                                                                       Fax (509) 210-4607

                                                               /s/ Clayton Cook-Mowery

                                                                     Clayton Cook-Mowery
                                                         Washington State Bar No. 41110
                                                         QUIROGA LAW OFFICE, PLLC
                                                   505 N. Argonne Rd., Suite B-109
                                                       Spokane Valley, WA  99212
                                                         Telephone (509) 927-3840
                                                               Fax (509) 210-4607

                                                                *Attorneys for Plaintiff*