UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTIAN GARCIA HERRERA,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN K. McALEENAN, Acting Secretary, Department of Homeland Security; LOREN MILLER, Director, Nebraska Service Center, U.S. Citizenship and Immigration Services; L. FRANCIS CISSNA, Director, U.S. Citizenship and Immigration Services; THOMAS D. HOMAN, Acting Director, U.S. Immigration and Customs Enforcement; CHRYSTA STOCK, Spokane Field Office Director, U.S. Citizenship and Immigration Services<br><br>Defendants. | NO: 2:19-CV-0094-TOR<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION |

BEFORE THE COURT is Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (ECF No. 4) and Plaintiff's Motion to Expedite Hearing (ECF No. 5). These matters were heard with oral argument on

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION ~ 1

May 7, 2019. Clayton Cook-Mowery appeared on behalf of Plaintiff. Jeffrey S. Robins and Rudolf J. Verschoor appeared on behalf of Defendants. The Court has reviewed the record and files herein and considered the parties' oral arguments, and is fully informed. For reasons discussed below, the Court **DENIES** Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (ECF No. 4) and **GRANTS** Plaintiff's Motion to Expedite Hearing (ECF No. 5).

**FACTS**

This case arises from the termination of Plaintiff Christian Garcia Herrera's deferred action status under Deferred Action for Childhood Arrivals ("DACA"). 

The following facts are drawn from Plaintiff's Complaint and are essentially undisputed as relevant and material to resolution of the instant motion. Plaintiff is 21 years old and currently resides in Tonasket, Washington. ECF No. 1 at 6, ¶ 27. According to his Complaint, Plaintiff was brought to this country from Mexico in 1998 when he was 1 year old. *Id*. Plaintiff completed junior high school, where he excelled academically, and graduated from high school in Tonasket in June 2016. *Id*. at 10, ¶ 43. Following graduation, Plaintiff began working as a firefighter for Washington's Department of Natural Resources ("DNR"). *Id*. at ¶ 44. Plaintiff hopes to one day work in law enforcement. *Id*. at 2, ¶ 3.

Plaintiff has been granted deferred action status under DACA for the past six years. Plaintiff first received deferred status under DACA in January 2013, and his

subsequent renewal applications were approved in 2015 and 2017. *Id*. at 11, ¶ 50. Plaintiff also applied for and received work authorization in conjunction with the grants of deferred action. Plaintiff's most recently approved renewal application extended his deferred action status and work authorization through February 13, 2019. *Id*.

On October 29, 2018, Plaintiff applied to renew his deferred action status and work authorization. *Id*. at 12, ¶ 51. Though Plaintiff's circumstances regarding his eligibility for DACA remained unchanged, as he continued to satisfy the program's educational and residency requirements and has no criminal history whatsoever, USCIS denied Plaintiff's renewal application on November 30, 2018. *Id*. at 4, ¶ 19; 12, ¶ 51. The November 2018 denial letter did not identify the factors USCIS considered or provide a detailed account of the reasons for USCIS's decision, aside from stating: "You have not established that you warrant a favorable exercise of prosecutorial discretion." ECF No. 4-20.

On January 14, 2019, Plaintiff submitted another renewal application to USCIS, which included additional evidence regarding Plaintiff's success in school and his work as a firefighter. ECF No. 1 at 12, ¶ 52. However, on February 5, 2019, Plaintiff's renewal application was again denied by USCIS. *Id*. According to Plaintiff, mirroring the November 2018 denial letter, the February 2019 denial letter simply stated that Plaintiff did not establish that he warranted a favorable

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION ~ 3

exercise of prosecutorial discretion, without noting any positive or negative factors considered in the decision-making process. *See* ECF No. 4-23. Following the denial of his renewal application, Plaintiff's grants of deferred action status and employment authorization officially expired on February 13, 2019.

On March 25, 2019, Plaintiff initiated this action for declaratory and injunctive relief against the following Defendants: Loren Miller, in his official capacity as Director of USCIS, Nebraska Service Center; L. Francis Cissna, in his official capacity as Director of USCIS; Thomas D. Homan, in his official capacity as Acting Director of the U.S. Immigration and Customs Enforcement ("ICE"); Chrysta Stock, in her official capacity as Spokane Field Office Director, USCIS; and Kevin K. McAleenan[1], in his official capacity as Acting Secretary of the Department of Homeland Security ("DHS"). ECF No. 1. Plaintiff contends that "[t]he government's decisions to deny the renewal of Mr. Garcia Herrera's DACA status, without meaningful explanation or process, and in violation of the program's enumerated eligibility criteria, violate the [APA] . . . as well as the Due Process Clause of the Fifth Amendment to the U.S. Constitution." *Id*. at 5, ¶ 22.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Acting Secretary of DHS, Kevin K. McAleenan, for his predecessor, former Secretary of DHS, Kristjen M. Nielsen.

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION ~ 4

As stated in his Complaint, Plaintiff specifically asks this Court to (1) "declare the government's actions unlawful," (2) "order that the government re-adjudicate his application for DACA under the program's existing eligibility criteria using a fair procedure," and (3) "comply with its own rules and restore his DACA, pending the outcome of the government's decisions." *Id*. at ¶ 23.

On April 18, 2019, Plaintiff filed a Motion for Temporary Restraining Order and/or Preliminary Injunction (ECF No. 4), which is presently before the Court. In the instant motion, Plaintiff seeks an order from this Court that temporarily enjoins the revocation of his deferred action status under the DACA program pending an eligibility determination that comports with the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), and the Due Process Clause of the Fifth Amendment. ECF No. 4. On May 2, 2019, Defendants collectively filed a response opposing Plaintiff's motion (ECF No. 9), and Plaintiff timely replied (ECF No. 11).

## DISCUSSION

### A. The DACA Program

On June 15, 2012, former Secretary of Homeland Security Janet Napolitano announced the creation of the DACA program. ECF No. 4-4 ("Napolitano Memo"). In her memorandum, Ms. Napolitano provided DHS with guidelines regarding the exercise of its prosecutorial discretion in the enforcement of "the

Nation's immigration laws against certain young people who came to this country as children and know only this country as a home." *Id.* at 1. The Napolitano Memo lists the following five criteria that "should be satisfied before an individual is considered for an exercise of prosecutorial discretion pursuant to this memorandum":

- came to the United States under the age of sixteen;

- has continuously resided in the United States for at least five years preceding the date of this memorandum and is present in the United States on the date of this memorandum;

- is currently in school, has graduated from high school, has obtained a general education development certificate, or is an honorably discharged veteran of the Coast Guard or Armed Forces of the United States;

- has not been convicted of a felony offense, a significant misdemeanor offense, multiple misdemeanor offenses, or otherwise poses a threat to national security or public safety; and

- is not above the age of thirty.

*Id.* Individuals must also pass a criminal background check to be eligible for DACA. *Id.* at 2. If a DACA applicant satisfies these eligibility criteria, USCIS may grant the applicant deferred action "on a case-by-case basis." *See* ECF No. 4-8 at 3 ("DACA FAQs"). Under the DACA program, deferred action is provided for a renewable period of two years, and DACA recipients are eligible to apply for work authorization during periods of deferred action. *Id.* at 3.

The National Standard Operating Procedures ("SOP") issued by DHS describe the procedures to be followed in adjudicating DACA requests and terminating DACA status. *See* ECF No. 4-24 at 2. The SOP is applicable to all personnel performing adjudicative functions that relate to DACA processing. *Id*. Particularly relevant here are the SOP procedures that apply to the adjudication of DACA renewal requests. Chapter 8 of the SOP, entitled "Adjudication of The DACA Request," provides the following guidelines for adjudicators:

> Officers will **NOT** deny a DACA request solely because the DACA requestor failed to submit sufficient evidence with the request (unless there is sufficient evidence in our records to support a denial). As a matter of policy, officers will issue an RFE or a Notice of Intent to Deny (NOID).
>
> If additional evidence is needed, issue an RFE whenever possible.
>
> When an RFE is issued, the response time given shall be 87 days.
>
> \*\*\*
>
> When a NOID is issued, the response time given shall be 33 days.

ECF No. 4-24 at 3. Currently, the DACA SOP applies to all requests to renew deferred action status under DACA.[2]

---

[2] In September 2017, former Attorney General Jeff Sessions rescinded DACA based on his determination that the program was an unconstitutional exercise of authority by the Executive Branch. A wave of litigation followed, resulting in

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION ~ 7

Plaintiff contends that Chapter 8 of the SOP requires adjudicators to always issue an RFE or NOIP before denying a DACA renewal request. ECF No. 11 at 8. Plaintiff also asserts, and Defendants concede, that USCIS denied his renewal applications in November 2018 and February 2019 without first sending Plaintiff an RFE or NOID. Defendants, on the other hand, argue that these provisions only require "RFE or NOID issuance, rather than denial, where the requestor has generally failed to submit sufficient evidence, or additional evidence is needed." ECF No. 9 at 9. Defendant maintains that the SOP guidelines do not require "RFE

---

several nationwide preliminary injunctions issued by district courts around the country, including the Northern District of California. *See Regents of University of California v. United States Dept. of Homeland Security*, 279 F. Supp. 3d 1011 (N.D. Cal. 2018). The Ninth Circuit affirmed the preliminary injunction issued in the Northern District of California on November 8, 2018. *See Regents of the University of California v. United States Dept. of Homeland Security*, 908 F.3d 476 (9th Cir. 2018). Pursuant to the injunction, USCIS must "maintain the DACA program on a nationwide basis on the same terms and conditions as were in effect before the rescission on September 5, 2017, including allowing DACA enrollees to renew their enrollments . . . ." *Regents*, 279 F. Supp. 3d at 1048-49.

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION ~ 8

or NOID issuance in the case of a requestor who establishes that the guidelines are met but who may not warrant a favorable exercise of discretion." *Id*. at 10.

**B. Motion for TRO and/or Preliminary Injunction**

In the pending motion, Plaintiff requests "a temporary restraining order and/or preliminary injunction temporarily enjoining Defendants' denial of Plaintiff's renewal application under [DACA]." ECF No. 4 at 1. Pursuant to Federal Rule of Civil Procedure 65, a court may (1) "issue a preliminary injunction only on notice to the adverse party" or (2) "issue a temporary restraining order without written or oral notice to the adverse party or its attorney." Fed. R. Civ. P. 65(a)-(b). Because Defendants received notice of this motion, submitted responsive pleadings, and participated in the motion hearing, the Court interprets Plaintiff's motion as a request for a preliminary injunction, rather than a request for a TRO.

A preliminary injunction is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008). To obtain injunctive relief under Rule 65, a plaintiff must make a "clear showing" of: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury in the absence of preliminary relief; (3) that a balancing of the hardships weighs in plaintiff's favor; and (4) that a preliminary injunction will advance the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).

Under the *Winter* test, a plaintiff must satisfy each element for injunctive relief. Alternatively, the Ninth Circuit also permits a "sliding scale" approach under which an injunction may be issued if there are "serious questions going to the merits" and "the balance of hardships tips sharply in the plaintiff's favor," assuming the plaintiff also satisfies the two other *Winter* factors. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("[A] stronger showing of one element may offset a weaker showing of another."); *see also Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks and citation omitted).

**1. Subject Matter Jurisdiction**

As a threshold matter, Defendants challenge this Court's ability to review the revocation of Plaintiff's deferred action status based on both the Immigration and Nationality Act ("INA"), as amended by the REAL ID Act, 8 U.S.C. § 1252(g), and the APA, 5 U.S.C. § 701(a)(2). ECF No. 9 at 13-18.

Section 1252(g) of the INA, as amended by the REAL ID Act, provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Supreme Court has explained that § 1252(g) is "directed against a particular evil: attempts to impose judicial

constraints upon prosecutorial discretion." *Reno v. American-Arab Anti-Discriminatory Committee*, 525 U.S. 471, 487 n.9 (1999). Accordingly, Defendants argue that Plaintiff's claims are precluded by § 1252(g) because the decision to grant or deny DACA status is an exercise of the Government's prosecutorial discretion. ECF No. 9 at 13-14.

The Court agrees with Defendants that, if Plaintiff was asking for review of the government's ultimate discretionary decision to terminate his DACA status, § 1252(g) would strip this Court of jurisdiction to review that determination. *See Reno*, 425 U.S. at 485 ("Section 1252(g) seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations . . . ."). However, the Court ultimately finds that § 1252(g) does not deprive the Court of jurisdiction to consider the narrower issue presented in this case; specifically, whether Defendants followed their own procedures in adjudicating Plaintiff's DACA renewal application and terminating Plaintiff's DACA status.

In *Reno*, the Supreme Court explicitly held that § 1252(g) "applies only to three discrete actions that the [Secretary] may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" 525 U.S. at 482 (emphasis in original). Moreover, in so holding, the Supreme Court specifically rejected a broad reading of the three discrete actions listed in §

1252(g), clarifying that "many other decisions or actions that may be part of the deportation process," including "the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order," are not included in § 1252(g)'s jurisdictional bar. *Id.; see also Regents of University of California v. United States Department of Homeland Security*, 908 F.3d 476, 503-04 (9th Cir. 2018). In short, contrary to Defendants' contentions, section 1252(g) does not apply to the entire universe of deportation-related claims.

Here, removal proceedings have not been commenced against Plaintiff and, more significantly, Plaintiff is not challenging the USCIS's individual "no deferred action" decisions. Rather, Plaintiff's claim relates to the process by which his DACA status was terminated. Because Plaintiff's claim does not implicate any of the three specific discretionary actions mentioned in § 1252(g), the Court finds that § 1252(g) does not deprive the Court of jurisdiction to consider whether Defendants followed their own procedures in denying Plaintiff's DACA renewal application and terminating Plaintiff's DACA status.

Likewise, the Court rejects Defendants' argument that § 701(a)(2) of the APA bars this Court from reviewing USCIS's decision to revoke Plaintiff's deferred action status. ECF No. 9 at 14-18. While the APA permits judicial

review of agency actions where "there is no other adequate remedy in a court," 5 U.S.C. § 704, the APA expressly precludes review of agency decisions that are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2). Because "individual DACA decisions fall squarely within the category of agency discretion for which judicial review is improper," Defendants contend that the APA specifically precludes judicial review of the agency action that Plaintiff challenges here. ECF No. 9 at 17.

The Court disagrees. Again, the flaw in Defendants' argument is their failure to acknowledge the distinct difference between challenges to an agency's ultimate discretionary decision and challenges to an agency's alleged failure to follow its own administrative procedures; unlike the former, the latter does not implicate agency discretion. To put it simply, the fact that USCIS has the ultimate discretionary authority to grant or deny an application for deferred action under DACA does not mean that every determination made by USCIS regarding the application, including the steps taken to review it, are necessarily discretionary and not subject to judicial review.

In this case, Defendants' alleged failure to follow the procedures detailed in the SOP does not implicate agency discretion. Therefore, the jurisdiction-stripping provisions of 8 U.S.C. § 1252(g) and 5 U.S.C. § 701(a) are not applicable to prevent this Court from determining whether Defendants complied with their non-

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION ~ 13

discretionary procedures. Because the Court concludes that it has jurisdiction over this action, it now turns to the merits of Plaintiff's claims.

**2. Likelihood of Success on the Merits**

To obtain injunctive relief, Plaintiff must show that there are "serious questions going to the merits" of his claim, and that he is likely to succeed on those questions of merit. *Cottrell*, 632 F.3d at 1131; *Farris*, 677 F.3d at 865. Plaintiff advances three claims in his Complaint: first, Plaintiff alleges that the revocation of his DACA status and employment authorization without any explanation violated § 706(a) of APA because the revocation did not comport with established procedures, and was therefore arbitrary and capricious; second, Plaintiff contends that, to the extent the revocation of his DACA status reflects a change in DACA eligibility criteria, such a change failed to satisfy the notice and comment requirements of the APA; and third, Plaintiff asserts that the revocation of his DACA status and employment authorization without notice or an opportunity to respond violated his rights under the Due Process Clause of the Fifth Amendment. ECF No. 1 at 13-14. The Court considers the merits of each claim in turn.

Regarding Plaintiff's first claim, Plaintiff contends that he is likely to succeed on the merits of his APA claim because the decision to deny his renewal application violated DHS's own procedures and, therefore, were arbitrary, capricious, and an abuse of discretion. ECF No. 4-1 at 12-13. According to

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION ~ 14

Plaintiff, the DACA SOP specifically details the procedures by which a person's DACA renewal application can be denied, including issuing an RFE and NOID before a denial is issued, and Defendants failed to follow the DACA SOP in their adjudication of Plaintiff's renewal applications. Defendants respond that there is no guidance in the DACA SOP that requires issuance of an RFE or NOID where an adjudicator establishes that the applicant satisfies the guidelines but may not warrant a favorable exercise of discretion. ECF No. 9 at 10.

Under the APA, "agency action must be based on non-arbitrary, 'relevant factors.'" *Judulang v. Holder*, 565 U.S. 42, 55 (2011) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983)). "When reviewing an agency action, we must assess, among other matters, 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* (quoting *State Farm*, 463 U.S. at 43).

Based on the record before it, the Court is simply unable to conclude at this time that Plaintiff is likely to succeed on the merits of his first APA claim. During the hearing on Plaintiff's motion, Plaintiff's counsel conceded that there is no proof in the record that adjudicators did not give case-by-case consideration to Plaintiff's renewal application, as required by the DACA SOP and related policy documents. Counsel explained that he speculated they did not given the lack of

RFE and NOID and the quick decision that was issued. The record in this case supports this concession, as it is devoid of any evidence to sustain Plaintiff's allegation that Defendants deficiently processed Plaintiff's renewal applications. When asked to explain how Defendants processed Plaintiff's application, Counsel for Defendants stated that adjudicators considered the relevant eligibility factors, determined that more information was not needed to supplement Plaintiff's applications, and ultimately decided to exercise their discretion to deny the renewal requests on that basis. Considering the record and briefing in this case, the Court concludes that Plaintiff cannot succeed on the merits of his APA claim.

Turning to Plaintiff's second APA claim, Plaintiff made no argument in the motion papers or during the motion hearing that he is likely to succeed on the merits of this claim. Plaintiff has not advanced his APA notice and comment arguments, at least for purposes of the pending motion. According, Plaintiff cannot succeed on the merits of this claim.

Finally, regarding Plaintiff's third claim, Plaintiff contends that the denial of his renewal application violates his due process rights under the Fifth Amendment because Plaintiff "has a protected property interest in his DACA status . . . and therefore he has a right to a fair procedure to establish his continued eligibility to for the program." ECF No. 4-1 at 13. "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property

interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). Thus, to succeed on his due process claim, Plaintiff must establish that he has "a legitimate claim of entitlement" in the renewal of deferred action status under DACA.

The Court finds that Plaintiff cannot make this showing. As the Ninth Circuit has recognized, Plaintiff's argument is undercut by the Napolitano Memo and the DACA FAQs. *See Regents*, 908 F.3d at 515. The Napolitano Memo expressly states that deferred action "confers no substantive right, immigration status or pathway to citizenship." ECF No. 4-4 at 3. The FAQs clarify that "USCIS retains the ultimate discretion to determine whether deferred action is appropriate in any given case even if the guidelines are met," and an individual's "deferred action may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion." ECF No. 4-8 at 7, 16. Accordingly, the Court finds that Plaintiff cannot succeed on the merits of his Due Process claim.

In sum, after thoroughly reviewing the parties' briefing and the record, the Court is unable to conclude that Plaintiff is likely to succeed on the merits of his APA or Due Process claims. Because Plaintiff has not shown likely success on the merits of his claims, the Court does not address the remaining *Winter* factors. Accordingly, the Court denies Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (ECF No. 4).

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION ~ 17

**ACCORDINGLY, IT IS ORDERED:**

1. Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction (ECF No. 4) is **DENIED**.

2. Plaintiff's Motion to Expedite Hearing (ECF No. 5) is **GRANTED**.

3. The Clerk of Court shall amend the docket to substitute Acting Secretary of DHS, Kevin K. McAleenan, for his predecessor, former Secretary of DHS, Kristjen M. Nielsen.

4. The District Court Clerk is directed to enter this Order and provide copies to the parties.

DATED May 8, 2019.



THOMAS O. RICE
Chief United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION ~ 18