JOSEPH H. HUNT
Assistant Attorney General
WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation
JEFFREY S. ROBINS
Deputy Director
JAMES WALKER
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section

JOSEPH H. HARRINGTON
United States Attorney
RUDY J. VERSCHOOR
Civil Chief
Eastern District of Washington
*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTIAN GARCIA HERRERA,<br><br>        Plaintiff,<br><br>  vs.<br><br>KEVIN MCALEENAN, Acting Secretary, Department of Homeland Security;[1] LOREN MILLER, Director, Nebraska Service Center, U.S. Citizenship and Immigration Services; L. FRANCIS CISSNA, Director, U.S. Citizenship and Immigration Services; THOMAS D. HOMAN, Acting Director, U.S. Immigration and Customs Enforcement; CHRYSTA STOCK, Spokane Field Office Director, U.S. Citizenship and Immigration Services,<br><br>      Defendants. | No. 2:19-cv-00094-TOR<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>NOTED WITHOUT ORAL ARGUMENT<br><br>AUGUST 2, 2019, 6:30 p.m. |

---

1 Acting Secretary Kevin K. McAleenan is automatically substituted for Kirstjen Nielsen in accordance with Federal Rule of Civil Procedure 25(d).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Table of Contents**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 1

    I.  Plaintiff .......................................................................................................... 1

    II. Deferred Action .......................................................................................... 2

ARGUMENT ............................................................................................................ 6

    I.  Legal Standards ............................................................................................ 6

        A.   Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1) ................................... 6

        B.   Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6) ................................... 7

    II. The Court lacks jurisdiction over Plaintiff's challenge to the discretionary
        denial of his DACA request. ............................................................................ 8

        A.   The Court lacks jurisdiction under 8 U.S.C. § 1252(g). .................... 8

        B.   The Court also lacks jurisdiction under 5 U.S.C. § 701(a)(2). ......... 10

    III.In the alternative, Mr. Herrera fails to state a claim regarding the process by
        which USCIS denied his DACA renewal request. ....................................... 14

        A.   Regulations, the DACA SOP, and USCIS's FAQs permit straight
            discretionary DACA denials. ............................................................ 15

        B.   There is no constitutionally protected interest in DACA. ................. 16

CONCLUSION ....................................................................................................... 17

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Authorities

**CASES**

*Arizona v. United States,*
   132 S. Ct. 2492 (2012) ..................................................................2

*Ariz. Dream Act Coal. v. Brewer,*
   757 F.3d 1053 (9th Cir. 2014) ..........................................................3

*Arpaio v. Obama*,
   797 F.3d 11 (D.C. Cir. 2015) ..........................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................7, 16

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
   727 F.3d 917 (9th Cir. 2013) ..........................................................16

*Bd. of Regents of State Colleges v. Roth*,
   408 U.S. 564 (1972) .......................................................................17

*Botezatu v. INS*,
   195 F.3d 311 (7th Cir. 1999) ..........................................................10

*Church of Scientology of Cal. v. United States,*
   920 F.2d 1481 (9th Cir.1990) ..........................................................11

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir.1994)...............................................................7

*Fabian-Lopez v. Holder*,
   No. 11-71513, 540 F. App'x 760 (9th Cir. April 29, 2013) ................10

*Flores-Panso v. Asher*,
   No. C13-1923-TSZ, 2014 WL 1338073 (W.D. Wash. April 2, 2014)...............10

*Gerhart v. Lake Cnty., Mont.*,
   637 F.3d 1013 (9th Cir. 2011) ..........................................................17

*Heckler v. Chaney,*
   470 U.S. 821 (1985)......................................................... 3, 11, 12, 13

ii

*Judulang v. Holder,*
    565 U.S. 42 (2011) ..............................................................................12

*Mack v. South Bay Beer Distribs., Inc.,*
    798 F.2d 1279 (9th Cir. 1986) ..............................................................7

*Marder v. Lopez,*
    450 F.3d 445 (9th Cir. 2006)..................................................................7

*Mendez-Garcia v. Lynch,*
    840 F.3d 655 (9th Cir. 2016)................................................................17

*Morales de Soto v. Lynch,*
    824 F.3d 822 (9th Cir. 2016).......................................................... 11, 13

*Nicholas v. INS,*
    590 F.2d 802 (9th Cir. 1979)........................................................ 12, 13

*Owen Equip. & Erection Co. v. Kroger,*
    437 U.S. 365 (1978) ...............................................................................6

*Parks School of Bus., Inc. v. Symington,*
    51 F.3d 1480 (9th Cir. 1995)..................................................................7

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.,*
    908 F.3d 476 (9th Cir. 2018)................................................... 10, 14, 16

*Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"),
    525 U.S. 471 (1999) ........................................................ 2, 3, 9, 10, 12

*Rodriguez v. Sessions,*
    No. 15-72487, 2017 WL 695192 (9th Cir. Feb. 22, 2017) ..................10

*Romeiro de Silva v. Smith,*
    773 F.2d 1021 (9th Cir. 1985) ...................................................... 12, 13

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation,*
    873 F.2d 1221 (9th Cir. 1989) ...............................................................6

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015)..................................................................3

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.,*
    594 F.2d 730 (9th Cir. 1979)..................................................................6

*Town of Castle Rock, Colo. v. Gonzales*,
    545 U.S. 756 (2005) .................................................................................16

*United States v. Armstrong,*
    517 U.S. 456 (1996) ................................................................. 11, 12, 13

*United States v. Lee*,
    274 F.3d 485 (8th Cir. 2001) ..................................................................11

*United States ex rel. Accardi v. Shaughnessy*,
    347 U.S. 260 (1954) ................................................................................11

*United States ex rel. Knauff v. Shaugnessy*,
    338 U.S. 537 (1950) ..................................................................................2

*Vasquez v. Aviles*,
    639 F. App'x 898 (3d Cir. 2016) ............................................................10

*Vilchiz-Soto v. Holder*,
    688 F.3d 642 (9th Cir. 2012) ..................................................................10

*Wayte v. United States*,
    470 U.S. 598 (1985) ................................................................................12

*Wedges/Ledges of Cal., Inc. v. City of Phoenix*,
    24 F.3d 56 (9th Cir. 1994) ......................................................................16

**STATUTES**

5 U.S.C. § 701(a)(2) ....................................................................... 10, 11

8 U.S.C. § 1103(a)(1) .............................................................................2

8 U.S.C. § 1103(a)(3) .............................................................................2

8 U.S.C. § 1182(a)(6)(A)(i) ...................................................................2

8 U.S.C. § 1227(a)(1)(B) .......................................................................2

8 U.S.C. § 1252(g) ....................................................................... 8, 9, 10

iv

1

**FEDERAL RULES OF CIVIL PROCEDURE**

2

Fed. R. Civ. P. 12(b)(1)................................................................................................6

3

Fed. R. Civ. P. 12(b)(6)................................................................................................7

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Plaintiff Christian Garcia Herrera ("Mr. Herrera") challenges the Department of Homeland Security's ("DHS") denial of his request to renew his Deferred Action for Childhood Arrivals ("DACA").[2] The Court should dismiss the Complaint for lack of jurisdiction and because Mr. Herrera fails to state a claim upon which relief can be granted.

**BACKGROUND**

**I.    Plaintiff**

Mr. Herrera is a 21-year old citizen of Mexico who has been living in the United States since he was 1 year old. Complaint ¶ 42. He attended, and in June 2016, graduated from high school in Tonasket, Washington. *Id*. at ¶ 43. Following high school, Mr. Herrera went to work for the Washington Department of Natural Resources as a seasonal firefighter. *Id*. at ¶ 44.

In 2013, Mr. Herrera received DACA and employment authorization to work in the United States. *Id*. at ¶ 50. His DACA renewal requests were approved in 2015 and 2017. *Id*. His latest renewal extended his DACA and work authorization until February 13, 2019. *Id*.

On October 29, 2018, Mr. Herrera requested to renew his DACA again. *Id*. at ¶ 51. On November 30, 2018, his renewal request was denied. *Id*. On January 14,

---

2 Mr. Herrera incorrectly asserts that his DACA was terminated in a number of his claims for relief. *See, e.g.*, ECF No. 1, Complaint for Declaratory and Injunctive Relief ("Complaint") at 14, Third Claim for Relief and Prayer for Relief. In denying Mr. Herrera's motion for preliminary injunction, the Court repeats this mistaken assertion. *See, e.g.,* ECF No. 14, Order Denying Plaintiff's Motion ("Order"), at 2 ("This case arises from the termination of Plaintiff Christian Garcia Herrera's deferred action . . ."). However, Mr. Herrera acknowledges that his previous DACA grant expired without action by the Government, as does this Court. *See* Complaint at 11-12; Order at 4. To the extent Mr. Herrera argues harm from or seeks relief from the termination of his DACA, the Court should not consider those claims.

1

2019, Mr. Herrera submitted another renewal request. *Id*. at ¶ 52. On February 5, 2019, this renewal request was denied. *Id*. Both denial notices informed Mr. Herrera that "You have not established that you warrant a favorable exercise of prosecutorial discretion." *See* ECF Nos. 4-20, 4-23.

## II.    Deferred Action

The Immigration and Nationality Act ("INA") charges the Secretary of the Department of Homeland Security "with the administration and enforcement" of the INA and "all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1). In doing so, the INA vests the Secretary with discretion over immigration matters, authorizing the Secretary to "establish such regulations; . . . issue such instructions; and perform such other acts as he deems necessary for carrying out his authority" under the statute. *Id*., § 1103(a)(3) (emphasis added). That broad discretionary authority reflects the longstanding recognition that immigration is "a field where flexibility and the adaptation of the congressional policy to infinitely variable conditions constitute the essence of the program." *United States ex rel. Knauff v. Shaugnessy*, 338 U.S. 537, 543 (1950).

Individuals are removable if, *inter alia*, "they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria set by federal law." *Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012); *see* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled . . . is inadmissible."); *id*. at § 1227(a)(1)(B) ("Any alien who is present in the United States in violation of this chapter or any other law of the United States . . . is deportable").

The federal government cannot practicably remove every removable alien. As a result, "[a] principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona*, 132 S. Ct. at 2499. DHS, "as an initial matter, must decide whether it makes sense to pursue removal at all." *Id*. "At each stage the Executive has discretion to abandon the endeavor." *Reno v. Am.-Arab Anti-Discrimination Comm*., 525 U.S. 471, 483 (1999) ("*AADC*"). As with other agencies

exercising enforcement discretion, DHS must balance a number of factors that are within its expertise. *See Heckler v. Chaney*, 470 U.S. 821, 831 (1985).

Deferred action is one of the ways in which DHS exercises prosecutorial discretion. Deferred action is "a regular practice" in which the Secretary exercises her discretion "for humanitarian reasons or simply for [her] own convenience," to notify an alien of a non-binding decision to forbear from seeking his removal for a designated period. *See AADC*, 525 U.S. at 483-84; 8 C.F.R. § 274a.12(c)(14) ("an act of administrative convenience to the government which gives some cases lower priority"). Through "[t]his commendable exercise in administrative discretion, developed without express statutory authorization," *AADC*, 525 U.S. at 484 (citations omitted), a removable individual may remain present in the United States so long as DHS continues to defer removal.

Deferred action does not confer lawful immigration status. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1058-59 (9th Cir. 2014). An individual with deferred action remains removable at any time, and DHS has the prosecutorial discretion to terminate deferred action unilaterally. *See AADC*, 525 U.S. at 484-85; *Texas v. United States*, 809 F.3d 134, 199 (5th Cir. 2015) (King, J., dissenting) (explaining that the terms "lawful presence" and "deferred action" mean "nothing more than DHS's tentative decision, revocable at any time, not to remove an individual for the time being – *i.e.*, the decision to exercise prosecutorial discretion").

On June 15, 2012, then-Secretary of Homeland Security Janet Napolitano announced the policy now known as Deferred Action for Childhood Arrivals ("DACA"). *See* Plaintiff's Exhibit ("Pl. Ex") No. 4, ECF No. 4-4 (DACA Memo). DACA made deferred action—a temporary postponement of the removal of individuals unlawfully present in the United States—available to "certain young people who were brought to this country as children" in violation of the immigration laws. *Id.* at 1. After completion of a background check, successful requestors would receive deferred action for a period of two years, subject to renewal. *Id.* at 2-3. The DACA Memo stated that deferred action was an "exercise of prosecutorial discretion,"

*id*. at 1, and that requests would be decided on "an individual basis," *id*. at 2. The Memo expressly cautioned that DACA "confer[red] no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." *Id*. at 3.

In August 2012, U.S. Citizenship and Immigration Services (USCIS) published on its website a webpage entitled, "Frequently Asked Questions," which is now archived on the USCIS webpage, as amended (available at https://www.uscis.gov/archive/frequently-asked-questions (last visited April 27, 2019); *see* Pl. Ex. No. 8, ECF No. 4-8 (retrieved March 6, 2019). These FAQs provide guidance on the DACA policy and state, in part: "Individuals who can demonstrate through verifiable documentation that they meet these guidelines will be considered for deferred action. Determinations will be made on a case-by-case basis under the DACA guidelines." DACA FAQs Q:2. The FAQs also explain that "[e]ach request for consideration of DACA will be reviewed on an individual, case-by-case basis," *id*. at Q:7, and that the DACA guidelines must be met for consideration of DACA, but that "U.S. Citizenship and Immigration Services (USCIS) retains the ultimate discretion to determine whether deferred action is appropriate in any given case even if the guidelines are met." *Id*. at Q:28.[3]

---

3 The instructions for the DACA request form (I-821D) contain similar language. "USCIS considers deferring action (including Renewal of deferred action) on a case-by-case basis, based on the guidelines in the "What is a Childhood Arrival for Purposes of This Form" section of these instructions. Deferred action is a discretionary determination to defer removal of an individual as an act of prosecutorial discretion." *See* Form I-821D Instructions (Jan. 9, 2017) at 1 (original emphasis omitted), *available at* https://www.uscis.gov/sites/default/files/files/form/i-821dinstr.pdf (last visited Mar. 1, 2019). Immediately before listing the referenced guidelines, the form instructions state that "[a]n individual may be *considered* for Initial DACA if he or she: . . . ." *Id*. at 1 (emphasis added). *See also id*. at 11 ("Even if you satisfy the threshold criteria for consideration of DACA, USCIS may deny your

Through an internal USCIS guidance document entitled the "National Standard Operating Procedures (SOP); Deferred Action for Childhood Arrivals (DACA)," or "DACA SOP," USCIS has provided officers in the Service Center Operations directorate with procedural guidance regarding DACA adjudications (available at https://cliniclegal.org/sites/default/files/ attachments/daca_sop_4-4-13.pdf (last visited April 27, 2019)).[4]

In a section titled "Request for Evidence (RFE) versus Notice of Intent to Deny (NOID)," the DACA SOP states:

> Officers will NOT deny a DACA request solely because the DACA requestor failed to submit sufficient evidence with the request (unless there is sufficient evidence in our records to support a denial). As a matter of policy, officers will issue an RFE or a Notice of Intent to Deny (NOID).

DACA SOP at 45.

> If additional evidence is needed, issue an RFE whenever possible.

> When an RFE is issued, the response time given shall be 87 days. A list of DACA RFE call-ups and the actual templates can be found in Appendix D.

DACA SOP at 45.

> When a NOID is issued, the response time given shall be 33 days.

DACA SOP at 45. This provision calls for RFE or NOID issuance, rather than denial, where the requestor has generally failed to submit sufficient evidence, or additional evidence is needed.

In a section titled "Denials – After RFE or NOID," the DACA SOP states:

---

request if it determines, in its unreviewable discretion, that an exercise of prosecutorial discretion is not warranted in your case.").

4 Although Defendants assert that an August 23, 2013 version of the DACA SOP applied to the adjudication of Mr. Herrera's DACA request, the provisions referenced herein are unchanged.

> In general, the officer shall issue a denial whenever the requestor's response to a Request for Evidence (RFE) or Notice of Intent to Deny (NOID) is insufficient to establish eligibility. There may be exceptions when a NOID or second RFE is appropriate after an initial RFE.

DACA SOP at 105.

The DACA SOP does call for an adjudicator to "issue an RFE," "[i]f additional information [regarding the proscribed guidelines] is needed for DACA consideration." DACA SOP at 48. The DACA SOP also calls for supervisory review "[i]n instances where an individual is unable to establish he or she warrants a favorable exercise of prosecutorial discretion under this process, and no other checkbox applies except 'You have not established that you warrant a favorable exercise of prosecutorial discretion,'" and "[i]n novel, complex, or sensitive cases, or cases that require a paragraph denial, supervisors will refer the case to HQSCOPS, through the normal chain of command." DACA SOP at 106. There is, however, no guidance in the DACA SOP – including in Appendix J "Notice of Intent to Deny Policy" – that calls for RFE or NOID issuance in the case of a requestor who establishes that the guidelines are met but who may not warrant a favorable exercise of discretion.

## ARGUMENT

### I.    Legal Standards

#### A.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

Because federal courts have limited jurisdiction, a court must dismiss any case if it lacks subject matter jurisdiction over the claims. Fed. R. Civ. P. 12(b)(1); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). The plaintiff bears the burden of proving that jurisdiction exists. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

**B.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

To survive dismissal under Rule 12(b)(6), "the complaint must allege sufficient facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts allow a court only to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id*.

Although the Court must accept as true all well-pleaded factual allegations when determining the legal sufficiency of a claim, it need not credit "legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.; *see Iqbal*, 556 U.S. at 678.

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir.1994). However, exhibits attached to the complaint, as well as matters of public record, may be considered in determining whether dismissal was proper. *See Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distribs., Inc*., 798 F.2d 1279, 1282 (9th Cir. 1986). Further, a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b) (6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id*.

Defendants request that the Court take judicial notice of the portions of the DACA SOP discussed above that are part of the same document (though a subsequent but substantively unchanged version, as noted above at footnote 3) Mr. Herrera filed excerpts of in support of his motion for preliminary injunction [ECF Nos. 4, 4-24], as

well as the Form I-821D Instructions, which is a matter of public record and is referenced in Plaintiff's complaint. *See* Complaint at 9, 12 (describing the background checks and filing fees attendant to the DACA renewal request process).

## II. The Court lacks jurisdiction over Plaintiff's challenge to the discretionary denial of his DACA request.

Defendants respectfully disagree with the Court's finding that any part of the decision not to exercise prosecutorial discretion in favor of an individual with no lawful status is subject to judicial review. Order at 13. The Court's analysis relies on "the distinct difference between challenges to an agency's ultimate discretionary decision and challenges to an agency's alleged failure to follow its own administrative procedures." *Id*. However, Defendants maintain that the ultimate discretionary decision at issue here, whether to grant or deny deferred action to an individual who may otherwise meet the DACA SOP guidance criteria, is not a typical agency decision that may be subject to even procedural review. Rather, it is an exercise of an agency's enforcement power that is both protected from judicial scrutiny by statute and by the uniquely defined doctrine of prosecutorial discretion. By asserting jurisdiction to review the factors considered, the weighing of evidence, and the basis for the ultimate exercise of discretion, *see* Order at 16-17, this Court would effectively eliminate the independent enforcement power guaranteed by the doctrine of prosecutorial discretion.[5]

### A. The Court lacks jurisdiction under 8 U.S.C. § 1252(g).

Defendants first disagree with the Court's determination that Section 1252(g) does not preclude Mr. Herrera's claims because "Plaintiff is not challenging the USCIS's individual 'no deferred action' decisions. Rather, Plaintiff's claim relates to the process by which his DACA status was terminated [sic]." Order at 12. In fact, Mr. Herrera makes clear in his complaint that he seeks to reverse the decision denying his DACA request without regard for the process by which it was denied – instead asserting an *entitlement* to deferred

---

5 That the Court agreed with the agency in this case to find discretion was properly exercised is of no consolation to the greater implication that the next court may be emboldened to order an agency to exercise its prosecutorial discretion differently.

action that overrides the Government's discretionary determination not to defer action in his case. *See, e.g.*, Complaint at 3, ("[T]here is no cause for him to be denied under the reasons provided by USCIS as a cause for denial."); *id.* at 13, First Claim for Relief ("The government's decisions are arbitrary and capricious and contrary to law because they misapply the mandatory DACA eligibility criteria . . . "); *id.* at 14, Third Claim for Relief ("Defendants have violated Mr. Garcia Herrera's due process rights by . . .[not] providing an opportunity . . . to present arguments and evidence to demonstrate that he continues to meet DACA's eligibility requirements."); *id.* at 14, Prayer for Relief ("Declare Defendant's *decision* . . . denying [Mr. Herrera's] application for renewal of DACA to be unconstitutional and contrary to law.) (emphasis added).

As this Court made clear, "if Plaintiff was asking for review of the government's ultimate discretionary decision to terminate his DACA status, § 1252(g) would strip this Court of jurisdiction to review that determination." Order at 11 (citing *Reno* [*AADC*], 425 U.S. at 485) (8 U.S.C. § 1252(g) was "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."). Regardless of how he attempts to frame the issue, Mr. Herrera is challenging the ultimate decision to deny his DACA request, and, at best, seeking additional process, to which the Court has already agreed he is not entitled. *Id.* at 16-17.

Mr. Herrera's Complaint also belies his assertion that his claims are not precluded by Section 1252(g) because they are independent of removal proceedings. *See* Complaint at 5 ("The . . . nonrenewal of Mr. Garcia Herrera's DACA [has] deprived him of . . . the assurance that he will be permitted to remain in the country . . ."); *id.* at 14, Prayer for Relief ("Enter an order enjoining Defendants from arresting or detaining Mr. Garcia Herrera during the pendency of this action and until Mr. Garcia Herrera's DACA eligibility can be re-adjudicated."). In fact, Mr. Herrera seeks an order from this Court that would make approval of a DACA request mandatory for anyone who meets the DACA SOP guidance criteria, and which cannot be terminated or discontinued (*i.e.*, creating a protection from removal) absent a showing that the individual no longer meets those criteria. Mr. Herrera's characterization of DACA policy as a categorical and permanent protected status is not only

baseless, it demonstrates the direct line from this action to the removal process he seeks to forestall, and thus to the preclusive effect of Section 1252(g) over his claims.

Precisely because of DACA's discretionary nature, the Ninth Circuit has held that Section 1252(g) precludes subject matter jurisdiction to review even the procedures related to determinations of whether an individual should be granted DACA. *See*, *e.g.*, *Vilchiz-Soto v. Holder*, 688 F.3d 642, 644 (9th Cir. 2012) ("[W]e lack jurisdiction to review petitioners' contention that the agency abused its discretion in denying the motion to reopen to seek prosecutorial discretion based on the recent order of President Obama."); *Rodriguez v. Sessions*, No. 15-72487, 2017 WL 695192, at *1 (9th Cir. Feb. 22, 2017); *Fabian-Lopez v. Holder*, No. 11-71513, 540 F. App'x 760, 761 n.2 (9th Cir. April 29, 2013); *cf. Flores-Panso v. Asher*, No. C13-1923-TSZ, 2014 WL 1338073, at *3 (W.D. Wash. April 2, 2014) (adopting recommendation that district court lacked jurisdiction over a claim that a stay of removal was warranted to afford the petitioner time to seek DACA).

Moreover, when the Ninth Circuit found that it had jurisdiction over programmatic challenges to the DACA rescission policy, the Court specifically acknowledged that "individual 'no deferred action' decisions . . . fall exactly within Section 1252(g) as interpreted by the Court in *AADC*." *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 504 (9th Cir. 2018), citing *Vasquez v. Aviles*, 639 F. App'x 898 (3d Cir. 2016); *Botezatu v. INS*, 195 F.3d 311 (7th Cir. 1999); *id.* at 503-04 ("It seems quite clear, however, that *AADC* reads Section 1252(g) as responding to litigation over individual 'no deferred action' decisions, rather than a programmatic shift like the DACA rescission.").

This precedent applies directly to the present case and precludes judicial review of the discretionary decision to deny a DACA renewal request. In sum, regardless of how Mr. Herrera frames the issue, 8 U.S.C. § 1252(g) precludes judicial review of the Government's exercise of its prosecutorial discretion.

**B.    The Court also lacks jurisdiction under 5 U.S.C. § 701(a)(2).**

The Court's finding that it had jurisdiction to review whether USCIS adjudicators "considered the relevant eligibility factors, determined that more information was not

needed to supplement Plaintiff's applications, and ultimately decided to exercise their discretion to deny the renewal requests on that basis," runs directly counter to Supreme Court precedent. *Heckler*, 470 U.S. at 831 (holding that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion" and is not amenable to judicial review); *see United States v. Lee*, 274 F.3d 485, 492–93 (8th Cir. 2001) ("Prosecutorial discretion has been treated differently than other types of agency discretion, [] and the special nature of prosecution is the reason that the *Accardi* doctrine[6] has not been applied to criminal law enforcement policies and procedures.") (internal citation to *United States v. Armstrong,* 517 U.S. 456, 464 (1996)).

Specifically, and contrary to this Court's findings, the Supreme Court has cautioned that an agency's judgments regarding how to exercise its enforcement power involve "a complicated balancing of factors which are peculiarly within [an agency's] expertise," including "whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall priorities, and, indeed, whether the agency has enough resources to undertake the action at all." *Heckler*, 470 U.S. at 831. As there is "no meaningful standard against which to judge the agency's exercise of discretion" in weighing these factors, an agency's exercise of enforcement powers is "presumed immune from judicial review under § 701(a)(2)." *Id.* at 830, 832; *see also Morales de Soto v. Lynch*, 824 F.3d 822, 828 (9th Cir. 2016) (discussing the *Heckler* decision and noting that "the exercise of prosecutorial discretion is a type of government action uniquely shielded from and unsuited to judicial intervention"); *Arpaio v. Obama*, 797 F.3d 11, 16 (D.C. Cir. 2015) (discussing the *Heckler* decision and explaining that "[i]n making immigration enforcement decision, the executive considers a variety of factors").

6 *See United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954); *Church of Scientology of Cal. v. United States,* 920 F.2d 1481, 1487 (9th Cir.1990) ("Pursuant to the *Accardi* doctrine, an administrative agency is required to adhere to its own internal operating procedures.").

Thus, this Court's determination that every discretionary DACA denial may be litigated in a federal court to determine whether an adjudicator considered certain factors, whether she properly determined that no additional evidence was needed, or on what basis she made the ultimate prosecutorial decision is untenable. The Court's reliance on *Judulang v. Holder* for the proposition that "agency action must be based on non-arbitrary, 'relevant factors,'" is misplaced here. Order at 15 (citing 565 U.S. 42, 55 (2011)). The *Judulang* Court was reviewing a non-discretionary (but random) application of a statute to a lawful permanent resident's eligibility for a discretionary form of relief from removal. *See* 565 U.S. at 57-59. The *Judulang* Court made no findings as to the reviewability of what factors are considered in an exercise of prosecutorial discretion, leaving the Supreme Court's long line of decisive holdings on that point firmly in place. *See AADC,* 525 U.S. at 484-85; *Armstrong*, 517 U.S. at 464*; Wayte v. United States*, 470 U.S. 598, 607-8 (1985); *Heckler*, 470 U.S. at 831.

Furthermore, the Supreme Court has made clear that deferred action decisions are a particularly serious form of prosecutorial discretion.

> [Because] a selective prosecution claim [in criminal law] . . . invade[s] a special province of the Executive—its prosecutorial discretion—we have emphasized that the standard for proving them is particularly demanding . . . . [] These concerns are greatly magnified in the deportation context. Regarding, for example, the potential for delay . . . in deportation proceedings the consequence is to permit and prolong a continuing violation of United States law.

*AADC,* 525 U.S. at 489-90. This line of precedents thoroughly contradicts the Court's finding of jurisdiction to review the underlying "eligibility factors" or the adjudicator's weighing of evidence that form the basis of a discretionary denial of DACA.

The Ninth Circuit has held that similar internal policy guidance on deferred action in the revised 1981 INS operating instructions was discretionary and unreviewable. *Romeiro de Silva v. Smith*, 773 F.2d 1021, 1025 (9th Cir. 1985). That holding contrasts with the Ninth Circuit's prior holding in *Nicholas v. INS*, 590 F.2d

802 (9th Cir. 1979). In *Nicholas*, the Ninth Circuit found jurisdiction to hear a challenge to a denial of deferred action because the five express humanitarian factors in the 1978 Operating Instructions, along with the directive nature of the language ("'In Every case'" where relief is appropriate, the District Director 'Shall recommend' deferred action"), made it "obvious that this procedure exists out of consideration for the convenience of the petitioner, and not that of the INS." *Id*. at 806-07. The Ninth Circuit specifically noted that "the Instruction plainly contemplates a scheme where the status would preclude any deportation as long as the relevant humanitarian factors are still compelling." *Id*. at 807.

Following *Nicholas*, the INS changed the deferred action referral language from "shall recommend" to "may, in his discretion, recommend," but left the humanitarian factors to be considered substantively the same. *Romeiro de Silva*, 773 F.2d at 1023 n.1. In a challenge to this changed language similar to Mr. Herrera's challenge here, the Ninth Circuit held that the district court lacked jurisdiction because, with the change from "shall" to "may," "it is no longer possible to conclude that [the instruction] is intended to confer any benefit upon aliens, rather than [to operate] merely for the INS's own convenience." *Id*. at 1024-25. Like the 1981 INS instructions, the DACA SOP does not contain a mandatory "shall" that curtails its discretion, but rather repeatedly states that an individual who meets DACA criteria *may be considered* for a DACA grant.

Thus, individual DACA decisions fall squarely within the category of agency discretion for which judicial review is improper. *See Chaney*, 470 F.3d at 830; *Morales de Soto*, 824 F.3d at 828. Here, Mr. Herrera is challenging USCIS's exercise of its enforcement power not to defer an otherwise lawful enforcement action against him. This is a classic challenge to DHS's exercise of its prosecutorial discretion. *See Chaney*, 470 U.S. at 831.

This type of enforcement decision involves a balancing of factors committed to agency discretion by law, including how to allocate agency resources. *See id.*; *Armstrong*, 517 U.S. at 464. The question for DHS was not whether it *could* exercise

its discretion in favor of Mr. Herrera, but rather whether it *should* do so. Because this type of discretionary determination is committed to DHS discretion by law, this Court lacks jurisdiction to review Mr. Herrera's claims.

**III.    In the alternative, Mr. Herrera fails to state a claim regarding the process by which USCIS denied his DACA renewal request.**

Even if the Court finds that it has jurisdiction over Mr. Herrera's action, the Court should still find, as it did in denying his motion for a preliminary injunction, that Mr. Herrera fails to state a claim for either a procedural or constitution violation of USCIS's policies and regulations.

As the Court previously found, Mr. Herrera "cannot succeed" in showing that he was entitled to the process he seeks, either through the DACA SOP or under the Due Process Clause of the Constitution. Order at 16 ("The record in this case . . . is devoid of any evidence to sustain Plaintiff's allegation that Defendants deficiently processed Plaintiff's renewal applications."); *id*. at 17-18 ("[T]o succeed on his due process claim, Plaintiff must establish that he has 'a legitimate claim of entitlement' in the renewal of deferred action status under DACA. The Court finds that Plaintiff cannot make this showing."). The Court correctly relied on the Ninth Circuit's holding in *Regents* that the Napolitano Memo and the DACA FAQs undercut any argument that DACA recipients are entitled to renew DACA as long as they continue to meet the DACA guidance criteria. *Id*. at 17 (citing *Regents*, 908 F.3d at 515).

> The Napolitano Memo expressly states that deferred action "confers no substantive right, immigration status or pathway to citizenship." ECF No. 4-4 at 3 [Napolitano Memo]. The FAQs clarify that "USCIS retains the ultimate discretion to determine whether deferred action is appropriate in any given case even if the guidelines are met," and an individual's "deferred action may be terminated at any time, with or without a Notice of Intent to Terminate, at DHS's discretion." ECF No. 4-8 at 7, 16 [DHS DACA FAQs].

*Id*.

//

//

14

**A.      Regulations, the DACA SOP, and USCIS's FAQs permit straight discretionary DACA denials.**

Mr. Herrera fails to support his vague argument that the denial of his DACA request violates unspecified "mandatory DACA eligibility criteria" and "DHS' own procedure for adjudicating DACA." Complaint at ¶ 59. To the extent the Complaint can be interpreted to infer an argument that the DACA SOP entitles him to a NOID or RFE before his DACA request can be denied, this Court correctly determined that the plain language of the DACA SOP includes no such requirement. *See* DACA SOP at 45, 48, 106; Order at 16 ("The record in this case . . . is devoid of any evidence to sustain Plaintiff's allegation that Defendants deficiently processed Plaintiff's renewal applications.").

As noted above, the chapter of the DACA SOP related to adjudications of DACA requests does not require a NOID or RFE to be issued in cases where the agency does not need additional evidence or information to render its decision. Here, USCIS did not deny Mr. Herrera's DACA renewal request because he failed to provide enough evidence, but because it determined that exercising prosecutorial discretion in his favor was not warranted. *See* ECF Nos. 4-20, 4-23. Furthermore, meeting the guidance criteria laid out in the SOP is not determinative. *See, e.g.*, DACA SOP at 50 ("Individuals *may be* considered for DACA upon showing that they meet the prescribed guidelines.") (emphasis added). Mr. Herrera identifies nothing in his Complaint to support his bald assertion that he was entitled to greater process.

Nor does Mr. Herrera support his claims that the Government's actions are insufficiently explained or represent a substantive change to DACA policy subject to notice and comment rulemaking. Complaint at ¶¶ 60-63, Second Claim for Relief. His claims are inapposite here – he has not sufficiently alleged that there was any change in agency policy that would support such a cause of action as to his individual DACA adjudication. As the Court noted, Mr. Herrera fails to offer any argument or evidence to show that the agency's particular choice to exercise prosecutorial discretion in one way or another was not within its existing policy. Order at 16. The Court need not

credit Mr. Herrera's threadbare "legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555.

In fact, nothing in the DACA Memo, DACA SOP, or Mr. Herrera's denial letter indicates that his request for DACA would have been approved under any alleged prior DACA policy, or for that matter, that his request *could not* be approved under any alleged changed DACA policy in effect at the time Mr. Herrera's request was denied. Rather, as this Court found in denying the motion for preliminary injunction, the DACA SOP has consistently placed the decision to grant or deny a DACA request at the discretion of the adjudicating officer, whether the requestor meets the SOP's guidance criteria or not. *See, e.g.,* DACA SOP at 44, 81; Form I-821D Instructions at 11; *see also* Order at 17.

### B.    There is no constitutionally protected interest in DACA.

Mr. Herrera's due process claim is another threadbare assertion that lacks any substantive support in his complaint. *See* Complaint at 14. Mr. Herrera merely asserts that Defendants violated his due process by not providing him "with adequate notice of intent to terminate, a reasoned explanation for their decision, and an opportunity to respond, and to present arguments and evidence to demonstrate that he continues to meet DACA's eligibility requirements." *Id.* Mr. Herrera fails to allege, nor can he establish, a protected constitutional interest in the receipt of DACA or in in the adjudicatory process because the ultimate result sought – deferred action – is discretionary, and because the Government never expressed a mutual intention to confer a protected benefit in DACA. *See* Order at 17 (citing *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994)); *Regents*, 908 F.3d at 515; ECF No. 4-4 (DACA Memo) at 3; ECF No. 4-8 (DHS FAQ) at 7, 16.

The "Due Process Clause does not protect everything that might be described as a 'benefit.'" *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 756 (2005). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of *entitlement* to it." *Blantz v. Cal. Dep't of Corr. & Rehab.*,

727 F.3d 917, 922 (9th Cir. 2013) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)); *see also Mendez-Garcia v. Lynch*, 840 F.3d 655, 665 (9th Cir. 2016) (underscoring that aliens cannot claim a cognizable due process interest in discretionary immigration relief or benefits). Even a practice of "generously" granting a "wholly and *expressly* discretionary state privilege" does not create a legal entitlement to that benefit. *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1020-21 (9th Cir. 2011) (citations omitted) ("A person's belief of entitlement to a government benefit, no matter how sincerely or reasonably held, does not create a property right if that belief is not mutually held by the government.").

As this Court found, nothing in the DACA memoranda, the DACA SOP, Form I-821D instructions, or FAQs indicate any promise of benefits or entitlement to DACA or notice and an opportunity to respond to a discretionary DACA denial. *See* Order at 17. Because Mr. Herrera challenges only the denial of a discretionary temporary grant of deferred action from removal, he fails to state a procedural due process claim.

## CONCLUSION

The Court should dismiss Mr. Herrera's Complaint for lack of jurisdiction, or, in the alternative, because Mr. Herrera fails to state a claim for relief.


DATED: June 10, 2019                              Respectfully Submitted,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1   JOSEPH H. HUNT                      /s/ James J. Walker
2   Assistant Attorney General          JAMES J. WALKER
                                        Trial Attorney
3   WILLIAM C. PEACHEY                   U.S. Department of Justice
4   Director                            Civil Division
                                        Office of Immigration Litigation
5   JEFFREY S. ROBINS                   District Court Section
6   Deputy Director                     P.O. Box 868, Ben Franklin Station
                                        Washington, D.C. 20044
7                                       Phone: (202) 532-4468
8                                       Fax: (202) 305-7000
                                        Email: james.walker3@usdoj.gov
9
10                                      JOSEPH H. HARRINGTON
11                                      United States Attorney

12                                      /s/ Rudy S. Verschoor
13                                      RUDY J. VERSCHOOR
                                        Civil Chief
14
15                                      Counsel for Defendants
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Hector E. Quiroga:                        hector@quirogalawoffice.com
Clayton Cook-Mowery:              clay@quirogalawoffice.com

And to the following non CM/ECF participants:   N/A

*/s/ Rudy S. Verschoor*
RUDY J. VERSCHOOR
Civil Chief